**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GORDIAN A. NDUBIZU | Criminal Action No. 22-318 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon Defendant Gordian A. Ndubizu's ("Defendant") Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 (the "Motion," ECF No. 46.) In his Motion, Defendant argues that the Court erred in excluding Exhibits D-2 through D-5 (the "exhibits")—alleged accounting sheets prepared by accountants in Nigeria. ("Moving Br." at 2, ECF No. 46.) Because the Court's evidentiary rulings regarding these exhibits were proper, and because Defendant cannot make the requisite showing of injustice and prejudice required by Federal Rule of Criminal Procedure 33, Defendant's Motion is hereby **DENIED**.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

The underlying facts of this matter are known to the parties and will not be repeated herein. On August 25, 2024, after a four-day trial, a jury convicted Defendant of willfully attempting to evade and defeat substantial income tax for the 2014, 2015, 2016, and 2017 tax years (counts one through four respectively); and willfully making and subscribing a false Form 1040 with the Internal Revenue Service for the 2014, 2015, 2016, and 2017 tax years (counts five through eight respectively). (Jury Verdict, ECF No. 45.)

1

Two weeks before trial, Defendant disclosed six exhibits,[1] showing what appeared to be typed ledgers by an accounting firm in Nigeria purporting to contain the financial information of Health Care Pharmacy, Inc. (Exhibit List, ECF No. 46-1; Motion in Limine, ECF No. 34.) These ledgers were typed on letterhead purporting to be that of Ugochukwu Ukah & Co., a group of "Chartered Accountants" with offices in Abuja and Owerri, Nigeria. (*Id.*) These documents were not previously produced in discovery. Thereafter, the Government requested Defendant's witness list which was to include witnesses who could authenticate Exhibits D-2 through D-5, but Defendant failed to disclose the witnesses. (Motion in Limine, ECF No. 34; Opp'n Letter, ECF No. 36.) On August 2, 2024, the Government submitted a motion in limine objecting to the authenticity of the proposed defense exhibits. (Motion in Limine, ECF No. 34.) The Government argued that "Exhibits D-2, D-3, D-4, D-5 . . . [are] inadmissible hearsay under Federal Rule of Evidence 802 and lack[] proper authentication under 18 U.S.C. § 3505.[2] (*Id.*)

On August 5, 2024, Defendant filed a letter response to the Government's motion in limine. (Opp'n Letter, ECF No. 36.) On August 6, 2024, the Court held a telephone conference with the parties. (ECF No. 37.) The next day, pursuant to an order from the Court, Defendant produced a list of witnesses who would attempt to authenticate the exhibits. (Government's Opp'n Br., at 5, ECF No. 54.) The three witnesses identified were three Nigerian natives: Ifeanyi Ilobi ("Ilobi"), Ugochukwu Ukah ("Ukah"), and Offor James Chukwurah ("Chukwurah"). (*Id.*)

Trial commenced on August 12, 2024. (ECF No. 38.) After the first day of trial, defense counsel disclosed that Ukah and Chukwurah would not be testifying, but that Defendant would

---

[1] Only Exhibits D-2 through D-5 are at issue in this instant Motion because Defendant (1) does not argue in his moving brief that the Court erred in its exclusion of Exhibit D-1, and (2) ultimately agreed at trial with the Government that Exhibit D-6 is inadmissible hearsay. (Motion Transcript. 389:5-9.)

2

seek to offer Exhibits D-2 through D-5 through (1) Defendant's alleged Nigerian attorney, Ilobi, who would testify that he picked up copies of the documents from one of the offices of Ugochukwu Ukah & Co. in Nigeria, and (2) the defendant's testimony that those documents looked like copies of documents the defendant allegedly received back in the period during which his 2014 through 2017 tax returns were being prepared. (Motion Transcript. 392:13-18, ECF No. 50.)

On August 14, 2024, before trial resumed, the Court heard oral argument from the parties on the evidentiary dispute. (Motion Transcript. 381-420, ECF No. 50.) Defendant argued that the documents, Exhibits D-2 through D-5, were not hearsay because they were not offered for the truth of the matter, and that Ilobi and Defendant would testify that "these are the records that [Defendant] received, and . . . that [Ilobi] went to the accountant's office and obtained identical records, so that they actually existed in the accounting office." (Motion Transcript. 391:20-25; 392:13-18, ECF No. 50.) The Government reiterated that it was objecting on hearsay and authentication grounds. (Motion Transcript. 394:6, ECF No. 50.)

When the parties concluded their arguments, the Court stated that Exhibits D-2 through D-5 were inadmissible as lacking proper authentication and as hearsay. (Motion Transcript. 411:8-10, ECF No. 50 ("[T]hese documents are inadmissible. They cannot come in based on a lawyer or even based on the testimony of Mr. Ndubizu.").) The Court explained that neither Defendant, nor Ilobi had the requisite knowledge to testify to the fact that Exhibits D-2 through D-5 were records of the accounting firm. (*See* Motion Transcript. 411:1-10, ECF No. 50.) The Court also emphasized that this issue could have been vetted two years ago, which would have given Defendant time to properly authenticate the documents. (*See* Motion Transcript. 411:1-10, ECF

3

No. 50.)[3] As to hearsay, the Court additionally found that the defense was offering the documents, including the letterhead identifying the documents as originating from Ugochukwu Ukah & Co., for the truth of the matter asserted without an applicable hearsay exception. (*See* Motion Transcript. 399:10-13, ECF No. 50.)

After being found guilty on all eight counts in the indictment, Defendant filed this instant motion seeking a new trial, (ECF No. 46), to which the Government responded, (Government's Opp'n Br., ECF No. 54.) The parties reiterated arguments made on the record in the August 14, 2024, argument.

## II. **LEGAL STANDARD**

Defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.[4] Rule 33 provides, in relevant part, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). A district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d

---

[3] The Court also asked defense counsel why he did not get the proper documents and certifications from witnesses from the accounting firm. (Motion Transcript. 404:3-5, ECF No. 50.) The Court emphasized that the "United States could not vet these foreign documents through the State Department or a consulate or anybody who could confirm whether these documents are legitimate. . . . If these were produced earlier, you probably would have learned of the objections by the United States earlier, and maybe then you would have gone back to Mr. Ndubizu and said, Hey, you need to go talk to somebody at the accounting firm and go get the proper certification because we have a problem here." (Motion Transcript. 409:20-410:6, ECF No. 50.)

[4] All references to Rules hereinafter refer to Federal Rules of Criminal Procedure unless otherwise noted.

4

Cir. 2008) (internal quotation marks and citation omitted). These motions should be "granted sparingly and only in exceptional cases." *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

## III. DISCUSSION

Defendant has failed to satisfy his "heavy burden" in establishing that he is entitled to a new trial. *See United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000) ("The movant has a 'heavy burden' in meeting" the requirements of Rule 33 (quoting *United States v. Ashfield*, 735 F.2d 101, 112 (3d Cir. 1984)).

### A. Authentication

As a threshold matter, the Court reiterates that Exhibits D-2 through D-5 were not, and could not be, properly authenticated, and therefore, its evidentiary ruling rejecting their admissibility was proper. Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Testimony of a witness with knowledge is sufficient to satisfy the authentication requirements of Rule 901(a). Fed. R. Evid. 901(b)(1).

Although the burden of proof for authentication is relatively low, Defendant nevertheless cannot show that Exhibits D-2 through D-5 are authentic. As the Court aptly identified on the record during the August 14 argument, "[w]e have no idea what these documents are, and bringing a lawyer or anybody else who's a citizen of Nigeria to testify to say, [t]hese are the documents that we purport them to be" is not sufficient." (Motion Transcript. 411:1-7, ECF No. 50.) Ilobi, an alleged Nigerian attorney with no publicly available presence online, and with no duty of candor to our Court, has no specialized knowledge, connection, or affiliation with Ugochukwu Ukah &

Co.; therefore, he has no knowledge to testify about the creation or accuracy of the exhibits. All Ilobi did, according to Defendant, was pick up the documents from the accounting firm. This fact alone has no bearing on whether the documents are what the proponent claims them to be—authentic tax documents prepared by the accounting firm. Moreover, as the Court noted on the record, if Ilobi, Defendant's Nigerian attorney, picked up the documents from the accounting firm, then he could have easily obtained the required certification from the accounting firm to authenticate the documents. (Motion Transcript. 405:24-406:1-4, ECF No. 50.) The record before the Court was simply devoid of any reliable information concerning who Ilobi was or how Ilobi was in a position to authenticate the exhibits. Therefore, the evidentiary ruling was proper, and a new trial is not warranted.

The Court's evidentiary ruling was proper as well because Defendant—through his testimony—also could not properly authenticate the exhibits. As the Court noted, it was "not necessarily precluding Mr. Ndubizu from testifying about [how he received the documents], but if you're going to admit these documents when I don't even know where they were done, when they were done, or who did them, and the only witness we're going to have is somebody who is not from the accounting firm, I don't think that that meets the requirements of the Rules of Evidence or federal statute or law." (Motion Transcript. 411:14-20, ECF No. 50.) This evidentiary ruling was proper, and nevertheless, does not meet the serious injustice standard of Rule 33 to warrant a new trial. However, although the contents of the documents were inadmissible, the Court nevertheless allowed defense counsel to show Defendant Exhibits D-2 through D-5, but warned counsel to "be very careful about crossing that line about" Defendant testifying as to the contents of the documents. (Motion Transcript. 416:14-20, ECF No. 50.) Thus, there was no prejudice to Defendant as he still spoke about the documents.

Adding to the uncertainty surrounding these documents, the exhibits were nowhere to be found in the approximately 8,000 pages of discovery the Government received, nor were they found on Defendant's computer, where he saved a voluminous number of documents related to his tax filings.

Moreover, the documents' appearance, which may be a sufficient way to support their authentication, *see United States v. Turner*, 718 F.3d 226 (3d Cir. 2013), illustrates that they lack the indicia of reliability that is typically needed under the Rules of Evidence for authentication. Other than being printed on Ugochukwu Ukah & Co.'s letterhead, the documents are not dated, show nothing indicating that they were made by the accounting firm, lack the name or signature of an employee of the accounting firm who made the documents, lack page numbers, are improperly aligned, and lack client tracking or account numbers which are typical of these types of documents.

Therefore, for the above-mentioned reasons, neither the defendant nor Ilobi had the requisite knowledge to authenticate the documents, and there has been no miscarriage of justice by the Court's evidentiary ruling.[5] Defendant's Motion on this ground is therefore denied.

---

[5] The timing that Defendant sought to introduce these exhibits is particularly ingenuine. Defendant argues that these exhibits are critical evidence to the defense. *See* Motion at 10 ("The entire defense was premised upon Dr. Ndubizu not acting willfully. That he did not know that the numbers were off as he relied upon the very accounting records the court precluded as evidence."). However, as the Court noted on the record, if this evidence was so crucial to the defense, Defendant could and should have apprised the Court of it earlier—not two weeks prior to trial. Defendant was allegedly aware of these exhibits as far back as 2022, and yet he did not provide the documents to the Government in discovery or come to the Court to address the admissibility of the evidence. Had Defendant done so, he would have learned early in the litigation that there were deficiencies regarding authentication with ample time to potentially address those deficiencies. Defendant's tactical decision to withhold these exhibits until the eve of trial was done so at his own peril.

**B.    Hearsay**

Defendant next argues that Exhibits D-2 through D-5 were not hearsay because they were not offered for the truth of the matter asserted but rather to show that Defendant relied on the documents to prepare his own handwritten ledgers. (Motion at 8.) The Court agrees with the Government that even if the exhibits were properly authenticated, they are nevertheless inadmissible hearsay under Federal Rule of Evidence 802. Hearsay is defined as a "statement" "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. Moreover, 18 U.S.C. § 3505, the statute governing foreign records of regularly conducted activity, reflects the language of the Rules of Evidence, and provides in relevant part:

> (a)(1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—
>
>> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
>>
>> (B) such record was kept in the course of a regularly conducted business activity;
>>
>> (C) the business activity made such a record as a regular practice; and
>>
>> (D) if such record is not the original, such record is a duplicate of the original;
>
> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
>
> (2) A foreign certification under this section shall authenticate such record or duplicate.

8

Defendant argues that he was not required to prove the requirements of authentication under 18 U.S.C. § 3505 because he was not offering the exhibits for the truth of the matter. (Motion at 6.) Without even addressing 18 U.S.C. § 3505's requirement that the method or circumstances of preparation be trustworthy, the Court finds that Defendant's use of the exhibits is to prove the truth of the matter—that the accounting firm of Ugochukwu Ukah & Co. produced the documents—without a valid hearsay exception. The fact that these exhibits were created by the accounting firm, and that they had the name of the firm at the top, is a necessary fact for their authentication. Put another way, Exhibits D-2 through D-5 are out of court statements being offered for the truth of the matter. *See United States v. Reilly*, 33 F.3d 1396, 1411 n.13 (3d Cir. 1994) ("If the typed signatures actually read 'Reilly,' then they would have been offered for the truth of the matter asserted."). As the Court correctly noted on the record, "you are offering part of this document as the truth for the matter asserted because you're offering it for the truth to say, this document says it comes from an accounting firm in Nigeria." (Motion Transcript. 403:9-13, ECF No. 50.)

This ruling was not error. Regardless, there was no miscarriage of justice by declaring the exhibits hearsay because they nevertheless could not be properly authenticated.

### C. Rule 33

For the reasons explained, the interests of justice do not require granting a new trial. The Court's evidentiary ruling was not error, and even if it was, there is no serious danger that a miscarriage of justice has occurred given the ample evidence at trial upon which to convict Defendant. *See Silveus*, 542 F.3d at 1004-05.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will deny Defendant's Motion for a New Trial. An appropriate Order will follow.

Date: September 18, 2024

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

10